# Farnham *versus* The Delaware and Hudson Canal Company.

1. By various Acts of Assembly, the damages from the construction of the works of the Delaware and Hudson Canal Company were to be assessed in the mode provided in those acts. After having constructed their works they enlarged them. *Held*, that the damages therefrom were to be assessed in the same manner.

2. The company having made the enlargement under color of their charter, the exercise of such power can be questioned only by the Commonwealth.

3. The Commonwealth may waive any breaches of conditions, express or implied, on which the corporation was created.

March 8th 1869. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Wayne county*: No. 397, to January Term 1868.

This was an action on the case, to May Term 1866, by F. W. Farnham against The President, Managers and Company of the Delaware and Hudson Canal Company.

The declaration set out, that on the 28th of April 1860, and long before the plaintiff was the owner in fee of a tract of fifty acres of land in Texas and Palmyra townships, Wayne county, on which are a saw-mill and water privilege; that the river Lackawaxen runs through his land and also land of the defendants; that they "kept and continued, &c., and still do keep and continue, wrongfully and negligently, a certain dam and causeway, before then wrongfully and negligently erected, raised and built, in and across the said river or stream for a long space of time, by means of which the waters of said river, with the said dam and causeway, insomuch did obstruct and raise that they by means of such obstruction and raising, running over and through the banks thereof, the said fifty acres of ground did overflow and drown, and the said waters did set back into the mill-race, and upon the wheel of said plaintiff, in and at his said saw-mill, thereby destroying and interfering with the said mill privilege and water power; whereby the plaintiff's said land or ground became rotten, spongy and unproductive, and his water-power

[Farnham *v.* Delaware and Hudson Canal Co.]

and mill privilege worthless, and the said plaintiff the whole benefit and profit of the said ground and water-power and mill privilege for a long time, &c., hath lost."

By Act of March 13th 1823, Pamph. L. 74, Maurice Wurtz, his heirs and assigns, were authorized to improve the river Lackawaxen or complete a slackwater navigation thereof, by dams, &c., to its mouth at the river Delaware. The act provided that if any person should be injured by any dams erected under the act, or the land of any person inundated, or any mill or other water-works injured by swelling the water, and Wurtz, his heirs and assigns, could not agree with the persons injured for compensation, a jury should be appointed,—in the manner provided in the act,—to assess the damages, and if a land or mill owner should be apprehensive that his property should be injured by the dams, he might require Wurtz, his heirs or assigns to give security for the payment of damages that might thereafter be awarded, and afterwards Wurtz should not proceed with his works until security should be given.

On the 23d of April 1823, the legislature of New York incorporated the defendants to construct a canal or slackwater navigation from the Delaware to the Hudson river. By the Act of April 1st 1825, Pamph. L. 141, the defendants, with the assent of Wurtz, were empowered to construct the works authorized by the Act of March 13th 1823. By the Act of February 9th 1826, Pamph. L. 25, the defendants were authorized instead of the slackwater navigation, "to construct a canal navigation, to be fed by the waters of said river or some of its branches;" and damages for injury to property holders by the construction of the works were to be estimated as was provided in the Act of 1823, and be paid by the defendants. The legislature of New York, on the 20th of April 1825, authorized the defendants to contract with Wurtz, &c. The Lackawaxen is a public highway.

The defendants made a canal along the river from Honesdale to its mouth; it was opened for navigation in 1828, being of capacity for boats of about 30 tons burthen. The dam complained of was erected at the time of the construction of the canal, and has been maintained for supplying the canal with water. In 1847 the company commenced the enlargement of their canal, and completed it in 1850.

The enlargement required an increase of supply of water, and in 1850 the defendants rebuilt and raised the height of their dams with brackets and slash boards across the Lackawaxen. By the Act of April 30th 1852, Pamph. L. 535, it was enacted: "That the 18th section of an act entitled, &c., passed the 13th day of March 1823, which provides for the resumption by the state of the improvements of the Delaware and Hudson Canal Company, known as the Pennsylvania section of the Delaware and Hudson

[Farnham *v.* Delaware and Hudson Canal Co.]

Canal, together with the corresponding stipulations, if any, in the supplements to said act, be, &c., repealed, and the said company are hereby authorized to conduct their business as they have heretofore done, according to their charter, and maintain and use their works and appertenances as heretofore, without liability to account and surrender as provided for in the said 18th section of the aforesaid act," &c.

By the Act of September 20th 1866, Pamph. L. of 1867, p. 1524, it is enacted, "that the damages which the defendants may be liable for from the construction of their works as the same now are or hereafter may be altered or extended, shall be secured and assessed in the manner provided" by the General Railroad Law of 1849.

The mill property which was alleged to be injured, had been owned by Cornelius Hornbeck up to December 1st 1854, when it was conveyed to the plaintiff. The plaintiff gave evidence that prior to the enlargement of the canal in 1850, there was no difficulty in running the mill; that after that, until 1858, the water backed into the tail race and impeded the motion of the mill, and in freshets entirely impeded the mill; in summer the defendants raise the water for the canal by putting on slash boards; the rafting channel of the dam is on one side of the stream, and the high part of the dam is about three feet higher than the rafting channel. He gave evidence also of the destruction of a spring, and injury to his land by the backing of the water.

The plaintiff requested the court to charge the jury as follows:—

1. That the Act of 1823 incorporating the defendants, and providing for the assessment of damages, was intended to apply to the original construction of their works, and does not apply to a case like the present, where, after they had constructed and occupied their canal for a period of twenty-two years, they doubled the size of their canal, and built a dam so high, if the jury believes the evidence, that they flowed waters where they never flowed before.

2. That the damages in this case are not such as could be determined by a view, under the Act of 1823, but were produced, if the jury believe the testimony, by the repeated and careless additions to the dam, such as the putting on of slash-boards at an unusual and unnecessary height.

3. That the view to be had under the Act of 1823, is applicable only to the assessment of damages occasioned by the original construction of their canal, or some repairs of the same.

4. That if, from the evidence, the jury believe that from 1850 to 1858 the defendants carelessly, unnecessarily or negligently raised their dam below the plaintiff's property so as materially to impair his water-power, such damages are not by law necessarily

to be assessed under the supplement to their charter of 1866, but may be recovered in the present action.

5. That compensation for damages occasioned by the construction of the defendants' canal in 1828, is not compensation for damages occasioned by the careless, unnecessary or negligent raising of their dam below the plaintiff's property in 1850, and that if the jury believe the plaintiff's mill-power was materially injured by such raising of the dam, he is entitled to recover in the present action.

6. That the original charter of defendants of 1823, under which they built and used their canal up to 1854, gave them no right to injure the plaintiff's mill-power in 1854 and subsequently, by raising their dams in the river Lackawaxen, without rendering them liable for such injury, and that if the jury believe from the testimony, that the defendants by thus doing, have injured the plaintiff's mill-power, they are liable therefor in the present action.

7. That under the Act of 1823, incorporating defendants, and under the Act of 1849, extended to them by their supplement of September 20th 1866, there cannot be repeated assessments of damages to the same property, and that if the jury believe from the testimony, that the plaintiff's mill property has been injured by the raising or erection of a dam in the river Lackawaxen since 1850, the plaintiff has no remedy therefor, except by an action at common law.

8. That if the jury believe, from the testimony, that the defendants, in raising their dam since 1850, built it unnecessarily high, and thus flowed the water back upon the plaintiff's mill-power, so as materially to injure the same, it was such a negligent construction of their works and use of their franchises as to render them liable for such injury in the present action.

The court, Linn, P. J., of the Twenty-fifth District, charged: * * * "The plaintiff not having produced any evidence from which you can find that the alleged injury complained of by him, resulted from a careless or unskilful use of the defendants' works, or from any abuse of the privileges or neglect of the duties belonging to the company, in no aspect of the case has the plaintiff shown a right to recover damages in this action. It is therefore your duty to render a verdict for the defendants.

"This instruction renders it unnecessary to answer the written points put by the counsel for the parties respectively."

The verdict was for the defendants. The plaintiff took a writ of error, and assigned the charge of the court for error.

*C. P. Waller* and *G. M. Harding* (with whom was *G. G. Waller*), for plaintiff in error.—The enlargement of the canal

[Farnham v. Delaware and Hudson Canal Co.]

was without additional legislation, and the company therefore acted *ultra vires:* Stewart's Appeal, 6 P. F. Smith 413.

*F. M. Crane* and *S. E. Dimmick,* for defendants in error.—It has been decided in New York that the company had power to enlarge their works: 29 Selden 634. The question of their power can be raised only by the Commonwealth: Cleveland & P. R. R. *v.* Speer, 6 P. F. Smith 334. Damages from the enlargement could have been assessed in 1850, under the Act of 1823: Union Canal *v.* Keiser, 7 Harris 136; Heilman *v.* Union Canal, 14 Wright 273. The plaintiff not being the owner of the property at the time of the enlargement, cannot recover damages: Zimmerman *v.* Union Canal, 1 W. & S. 346. There was no evidence that the defendants used their property in an unreasonable manner, and they therefore could not be liable: Pittsburg, Ft. W. & C. Railway *v.* Gilleland, 6 P. F. Smith 450.

The opinion of the court was delivered, May 11th 1869, by

READ, J.—On the 13th March 1823, the General Assembly of Pennsylvania passed an act, authorizing Maurice Wurtz, his heirs and assigns, to improve the navigation of the river Lackawaxen, by making a good and safe descending navigation, at least once in every six days, except when the same may be obstructed by ice or floods, from or near Wagner's Gap in the county of Luzerne, or from or near Rex's Gap in the county of Wayne, to the mouth of the said river Lackawaxen, or a complete slackwater navigation from the same points to the river Delaware. The powers given by the 1st section are extended to both species of improvement.

On the 23d April in the same year, the legislature of the state of New York incorporated "The President, Managers and Company of the Delaware and Hudson Canal Comyany," with power to make, construct and for ever maintain a canal or slackwater navigation, of suitable width, depth and dimensions, to be determined by the said corporation, from such point on the river Delaware, within the jurisdiction of the state, through any one or more of the counties of Orange, Sullivan and Ulster, to such points on the river Hudson, as the said corporation shall judge best.

The 21st section authorized the corporation, to contract with Maurice Wurtz, for the purchase of all his rights and privileges under the first mentioned act of the 13th March, and for the purchase of lands containing stone coal, and to apply any part of their capital to the payment of the same, and also, to the improvement of the river Lackawaxen, in the same manner as the said Maurice Wurtz is authorized to do, and to engage in transporting to market the coal they may have purchased. By a supplement of the 7th

April 1824, the company was authorized to increase its capital to $1,500,000, and another supplement conferred banking powers.

By an Act of the legislature of Pennsylvania of the 1st April 1825, the Delaware and Hudson Company were practically substituted for Maurice Wurtz, in the improvement of the river Lackawaxen, and by an Act of the legislature of New York of the 20th April 1825, this substitution was ratified. By an Act of the legislature of Pennsylvania of the 9th February 1826, and another of the 5th April in the same year, the company were authorized to " construct a canal navigation fed by the waters of the said river or some of its branches," and railways. By subsequent acts loans of the credit of the state of New York to the company were made.

The canal as originally constructed in the state of New York was completed in or before 1835, but was soon found inadequate for its business. The company then in 1849 commenced enlarging, widening and deepening the canals and raising its embankments. The power to do this under their charter was sustained by two decisions of their Supreme Court, the first in July 1853, in Bruce *v.* The Company, 19 Barbour 371, and the second in 1855, in Selden *v.* Same, 24 Barbour 362, and finally by the Court of Appeal, in January 1864, in 2 Tiffany (29 N. Y. 7), 634.

By the case of Calkins *v.* Baldwin, 4 Wendell 667, approved by Judge Selden, 2 Tiffany 641, the remedy of a person claiming indemnity for injury by the enlargement, is confined to that pointed out in the charter.

In Pennsylvania the canal was opened for navigation in 1828, and the dam which is the subject of the present controversy was then erected, and has been maintained ever since for supplying the canal with water. In 1847 the company commenced the enlargement of their canal which was completed in 1850. It was enlarged in width and depth, necessarily requiring an increase in the supply of water, to obtain which the company rebuilt, repaired and raised the height of their dams across the Lackawaxen. The dam in question with its brackets and slash-boards was rebuilt and raised in 1850, so as to afford the necessary increased demand of water.

The Act of 1833 carefully provided for the uninterrupted rafting of lumber, and a rafting-channel is provided in all their dams, and in the dam in the present case it is 34 feet wide and about 3 feet lower than the balance of the dam. After the freshets have subsided and rafting over, the canal company then put in their brackets and slash-boards which complete the dam in the ordinary state of the waters.

The canal company to supply their canal with water have a number of large reservoirs. As soon as the freshets subside water

is drawn from them into the river Lackawaxen, and by dams retained and by feeders carried from the river into the canal.

Each dam with its brackets and slash-boards, when used to retain water, has necessarily to be kept and maintained at a fixed uniform height, so as to afford a steady uniform supply of water to the canal level it supplies, and the other levels connected with and supplied therefrom.

The canal thus enlarged from Honesdale to Rondout, is a great public work of incalculable advantage to the inhabitants of both states under whose authority it has been constructed. The power of enlargement in New York is settled by judicial construction and decision; in Pennsylvania a liberal interpretation of our own acts if necessary might lead to the same result. Whatever has been done by the canal company, has been done clearly under color of their charter if not distinctly authorized by that instrument, and according to the well-settled doctrine in this state, the exercise of this power, privilege and franchise can only be questioned by the Commonwealth, acting by its legal representative in the mode prescribed. It cannot be questioned by an individual, and certainly not by the plaintiff in this case.

" But an information for the purpose of dissolving the corporation or of seizing its franchises, cannot be prosecuted but by the authority of the Commonwealth to be exercised by the legislature, or by the attorney or solicitor general acting under its direction or *ex officio* in its behalf. For the Commonwealth may waive any breaches of any condition expressed or implied on which the corporation was created, and we cannot give judgment for the seizure by the Commonwealth of any franchises of any corporation, unless the Commonwealth be a party in interest to the suit and thus assenting to the judgment: " per Parsons, C. J.; Angell & Ames on Corporations, 8th ed. 730.

But the Act of 30th April 1852, Pamph. L. 535, contains a distinct legislative recognition of the works as enlarged at that period, and the remedy provided by the Act of 1823 and its supplements, is expressly applicable to injuries arising from these raised dams whether new or repaired constructions: Union Canal Co. v. Keim, 7 Harris 134; Heilman v. Union Canal Co., 14 Wright 268.

But further, by a supplement to the Act of 1823, passed 20th September 1866 (Pamph. L. 1867, p. 1524), an end is put to all doubt whether the legislature have approved and sanctioned the enlargement of these public works. It enacts that the damages which the company may be liable for from the construction of their works as they are, or hereafter may be altered or extended, shall be secured and assessed in the manner provided by the General Railroad Act and its supplements.

The dam is composed of the permanent portion of the rafting channel with the brackets and slash-boards, and for any injury

[Farnham *v.* Delaware and Hudson Canal Co.]

done it by backing the waters upon the land or saw-mill, or the mill-race, or wheel, or works of the plaintiff, his remedy is under the Act of 1823, or now under the Act of 1866.

The action was misconceived, and we see no reason for reversing the judgment.

Judgment affirmed.